**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**BRENDA L. SANCHEZ,**

     **Plaintiff,**

**v.**                              **CASE NO. 8:06-CV-1832-T-EAJ**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security Administration,**

     **Defendant.**

_____ /

**FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI").

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.[1]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405 (g) (2003). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 8).

judgment as to the weight of the evidence for that of the Commissioner.  See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I.

Plaintiff filed her application for SSI on February 8, 2002, with an alleged onset of disability of January 1, 1999, but she later amended her onset date to February 8, 2002. (T 21)  Plaintiff claims disability due to depression, nervousness, "hearing things", sleep loss and migraine headaches.  (T 23)  Plaintiff was thirty years old at the time of the administrative hearing on January 13, 2005 and has a tenth grade education. (T 22)  Her past work experience was as a sales clerk, packer, certified nurse assistant, and receptionist. (Id.) The ALJ found that since the alleged onset of disability, Plaintiff has not engaged in substantial gainful activity. (T 27)

The ALJ's July 28, 2005 decision concluded that Plaintiff was not disabled within the meaning of the Act because Plaintiff's depression does not prevent her from performing her past relevant work as a packer.  (T 28 ) The ALJ, in evaluating Plaintiff's residual functional capacity ("RFC"), found that Plaintiff suffers no exertional limitations. (T 26)

## II.

Plaintiff alleges the Commissioner erred in: (1) not giving substantial weight to Plaintiff's treating sources; (2) not regarding Plaintiff's limitations as credible; (3) failing to credit the

testimony of the vocational expert ("VE") in response to the ALJ's second hypothetical question; and (4) failing to consider the side effects of Plaintiff's medications. (Dkt. 12)  Issues two and four overlap and shall be addressed as one issue.

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

**A**.  Plaintiff contends that the Commissioner failed to properly weigh the opinions of Plaintiff's alleged treating physicians: Riqueza Cua, M.D. ("Dr. Cua") and Frank Mancari, Psy. D. ("Dr. Mancari").

In addition to failing to provide record cites for the medical records referenced on this issue, Plaintiff also neglects to summarize the ALJ's evaluation of this evidence or to show specifically why the Commissioner erred.   Accordingly, the court's review of this issue will be similarly truncated as Plaintiff's argument is unpersuasive.

First, neither Dr. Mancari nor Dr. Cua are treating physicians.  The ALJ specifically noted that Dr. Cua saw Plaintiff on only one occasion on June 4, 2004, the same day Dr. Cua prepared a psychiatric review technique form. (T 26; 515-16; 518-34)[2]  The ALJ rejected Dr. Cua's assessment as "not supported by the bulk of the mental health evaluations and treatment notes from The Harbors where the claimant receives her treatment for depression." (T 26) Further, the ALJ observed that "reports from The Harbors, where [Plaintiff] did have an ongoing relationship, show that the claimant was able to concentrate and had no problems focusing on tasks at hand.  She was able to perform her activities of daily living independently and was able to take care of and rear her five

---

[2]  Dr. Cua's examination notes reflects that Plaintiff was "referred by her lawyer as she is seeking disability."   (T 515)

children." (Id.)

Therefore, despite the fact that Dr. Cua opined that Plaintiff had a Global Assessment of Functioning ("GAF") score of 50 and that her mental limitations met the findings for affective disorders and panic disorders under Sections 12.04 and 12.06, respectively, of the Listings of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, the ALJ properly evaluated this evidence and rejected the opinions of Dr. Cua.

As for Dr. Mancari, he too was a one-time consultative examiner who evaluated Plaintiff on June 11, 2002 in connection with her application for SSI. (T 198-200)  The ALJ's opinion summarizes Dr. Mancari's findings and conclusions, including Dr. Mancari's opinion that Plaintiff would have significant limitations in working and that Plaintiff's prognosis was guarded.  (T 24)[3]  While not expressly rejecting Dr. Mancari's assessment of Plaintiff's limitations, the ALJ credited other record evidence in concluding that Plaintiff's depression, despite being a severe impairment, is not disabling. (T 23-26)  There is substantial evidence to support his conclusion.[4]

Plaintiff's memorandum of law also mentions, but does not specifically identify, a therapist who assigned Plaintiff a GAF score of 45. (Dkt. 12 at 7).   John Femenella, A.R.N.P. ("Mr. Femenella") saw Plaintiff on February 5, 2002 for a mental health evaluation and diagnosed major depression, severe with some psychotic  features, and a GAF score of 45. (T 180-83)  He started

---

[3]  However, the ALJ also noted that Dr. Mancari recorded  a GAF score of 70 for Plaintiff during the consultative examination. (T 24; 199)

[4]  The ALJ cited the absence of any records of hospitalization for mental health problems, the fact that Plaintiff's average GAF scores were between 55-60 during consultative examinations, and records from the Harbors Mental Health Center where Plaintiff was treated and prescribed medication for her condition. (T 26)  Plaintiff has not suggested that these findings are not supported by the record.

4

Plaintiff on Paxil and Geodon and indicated that these medications should be monitored for maximum effectiveness and any side effects. (T 182)[5]

A single GAF score, standing alone, is not dispositive of a disability applicant's mental functioning. See Wisner v. Astrue, 496 F.Supp.2d 1299, 1304 (N.D. Ala. 2007); Seymore v. Apfel, 131 F.3d 152, No. 97-5068, 1997 WL 755386, at *1-2 (10th Cir. Dec. 8, 1997). Nor are the opinions of a one-time examiner entitled to special weight in a disability determination. See generally McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986).

In conclusion, the Commissioner properly evaluated the opinions of Dr. Cua, Dr. Mancari, and Mr. Femenella. None of these medical sources qualified as treating physicians. Plaintiff has not shown entitlement to relief as to issue one.

**B.** Plaintiff also claims that the ALJ did not properly evaluate Plaintiff's credibility (issue two) and failed to properly assess any medication side effects (issue four). As stated above, these contentions will be evaluated together.

According to Plaintiff, the ALJ failed to properly evaluate her non-exertional impairments of headaches, pain, and depression. Once again, Plaintiff fails to provide record cites for any of the testimony contentions. The ALJ observed that Plaintiff testified that she suffers from severe headaches "which happen 4 times a month and last 3-4 days each." (T 25) According to the ALJ, most of Plaintiff's medical records relate to her pregnancies and the births of her children. (T 26) However, the ALJ noted that Plaintiff was prescribed "Tylenol with codeine for her migraines and there is nothing further that has been done for her alleged migraines." (Id.) Further, the severity of

---

[5] Mr. Femenella suggested a return appointment in 4 weeks (T 182) but there is no indication in the record that Plaintiff saw this therapist again.

her alleged symptoms was inconsistent with Plaintiff's testimony regarding her childcare responsibilities, according to the ALJ. (Id.)

The ALJ also noted Plaintiff's complaints of back pain radiating to her left leg which "occurred 2-3 times a week and lasted for two hours each time" and renders Plaintiff unable to walk or stand during these episodes. (T 25)  However, the ALJ found these allegations inconsistent with Plaintiff's testimony and records indicating that she "spends the day taking care of her baby and rearing her other 4 children." (T 26)

Regarding Plaintiff's depression, while finding it to constitute a severe impairment, the ALJ rejected Plaintiff's testimony that she experiences "panic attacks three times a day, lasting for 1-3 hours" as inconsistent with the bulk of the medical evidence. (T 26) Also, the ALJ discounted Plaintiff's testimony that her depression and anxiety causes her to be bedridden or hospitalized as inconsistent with the record. (Id.)

There is substantial evidence to support the ALJ's conclusion that Plaintiff's complaints of headaches, back and leg pain cause no "vocationally relevant limitations." (T 23)  Allen v. Sullivan, 880 F.2d 1200, 1201-02 (11th Cir. 1989). As for Plaintiff's depression, the ALJ found it to be a severe impairment which did not, however, preclude her from performing her past relevant work as a packer.  (T 26-27)   There is substantial evidence to support this finding as well.

In her argument regarding medication side effects,  Plaintiff simply points out that she testified about side effects at the hearing.  (Dkt. 12 at 10)  Plaintiff told her attorney at the hearing that she "throws up" her pain medication about three times a day when she drinks a lot of medication. (T 559)  However, she denied any other side-effects. (Id.)

Plaintiff's argument on this issue is also conclusory.  She fails to point to any evidence in the record that any physician stated that medication side-effects could affect her ability to work.  Cf.

MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986) (noting appeals council's failure to evaluate treating physician's statement that plaintiff's medication interferes with his ability to keep and hold a job).  Nor was there any obligation for the ALJ to further consider Plaintiff's testimony as to medication side-effects given the record as a whole.[6]  Accordingly,  the ALJ did not err in evaluating Plaintiff's credibility in terms of alleged medication side-effects.

Plaintiff also contends that the ALJ did not properly consider the combined effect of her impairments, specifically pain, headaches, and depression (Dkt. 10 at 7-9).  Although the ALJ's decision refers to  "impairments" (in the plural) and "combination of impairments" when discussing the legal framework for a disability analysis (T 22), the decision fails to contain the type of language in addressing Plaintiff's specific claimed impairments which this circuit has held satisfactory to discharge this duty.  Compare Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990) (remanding because the ALJ's broad statement that he considered plaintiff's combined impairments does not reveal how he evaluated the effect plaintiff's impairments may have on her ability to obtain proper treatment), and Gibson v. Heckler, 779 F.2d at 623 (remanding because the ALJ discussed some of plaintiff's impairments but not others), with  Jones v. Dep't Health & Human Serv., 941 F.2d 1529, 1533 (11th Cir. 1991) (holding that ALJ's statement that plaintiff does not suffer from "an impairment or combination of impairments" evidences consideration of the combined impact of plaintiff's impairments), and  Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986) (holding that the ALJ considered the combination of impairments issue when he stated that "based upon a

---

[6]  The Commissioner's memorandum of law points out one instance in the record where, during a hospital admission in June 2003,  Plaintiff complained of nausea and vomiting which she attributed to side-effects from codeine medication for migraine headaches.  (Dkt. 14  at 10; T 305-06;  310-12) However, as the Commissioner points out, the medical record does not contain any consistent complaints of this nature.

thorough consideration of all evidence" the plaintiff does not suffer from "any impairment or combination of impairments").  Accordingly, a  remand is required in order for the Commissioner to consider the combined effect of Plaintiff's impairments, both severe and non-severe, consistent with the caselaw of this circuit.

**C.** Finally, Plaintiff submits that the ALJ should have credited the VE's testimony as to the second hypothetical question. (Dkt. 12 at 9)  In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing McSwain v. Bowen, 814 F.2d at 619-20).

If remand is required on some of the issues raised in the case, it may be unnecessary to review other objections to the ALJ's conclusion.  See, e.g., Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1991).  Because the ALJ's assessment of Plaintiff's RFC could change on remand, an analysis regarding issue three is better deferred.   However, the current record contains some ambiguities which should also be clarified on remand.

While finding Plaintiff's depression to be a severe impairment (T 27), the ALJ also stated that "due to her mental impairments [Plaintiff] would frequently be able to interact with the public, supervisors, and co-workers and would frequently be able to maintain concentration, persistence, or pace." (T 26)  Yet, in the next paragraph of the decision, the ALJ found that Plaintiff "would have mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate deficiencies of concentration, persistence, or pace performing detailed tasks but mild deficiencies performing simple tasks; and [Plaintiff] has never had episodes of decompensation." (Id.)

At the hearing, the ALJ asked the VE a total of four hypothetical questions based on different

RFC assessments.  (T 570-72)   Based on the first question, the VE answered that Plaintiff could perform both former jobs as a packer and a sales clerk.  (T 570)   In responding to the second question, the VE stated that Plaintiff could perform her former work as a packer but her ability to perform a sales job "would depend on the location." (T 570-71)  In response to the third question, the VE answered that the sales job would be eliminated because "if one is only able to maintain concentration and pace part of the day, then one would not be able to perform those jobs." (T 571) the VE clarified that in that situation,  there would be no jobs that Plaintiff could perform with the limitations articulated in the third hypothetical question.  (Id.)  Then, in response to the fourth hypothetical (which set forth Plaintiff's testimony as to her panic attacks and need  to lie down due to pain), the VE responded that there were no jobs which she could perform.  (T 571-72)

As the ALJ concluded that Plaintiff could perform her former work as a packer (but did not conclude that she could also work in sales) (T 27), it is likely that the ALJ credited the VE's response to the second hypothetical question.  Because that question assumed certain restrictions imposed by Dr. Cua as well as Plaintiff's ability to "frequently .  .  . deal with public, co-workers, and supervisors" and "frequently . . . maintain concentration, persistence, and pace" there is an arguable tension between that hypothetical question and  certain of the ALJ's other findings.  First, Plaintiff's alleged ability to frequently interact with the public may be at odds with the ALJ's RFC finding that Plaintiff has  moderate difficulties in maintaining social functioning.  Second, the ALJ rejected Dr. Cua's assessment of Plaintiff's limitations (T 26), yet he incorporated Dr. Cua's restrictions in the hypothetical question to the VE. (T 570-71)

Accordingly, on remand, the Commissioner shall clarify these ambiguities and potential inconsistencies in determining Plaintiff"s RFC and in applying the remaining steps of the sequential process for determining disability under the Act.  Although a remand for further fact-finding is

necessary, the court expresses no view as to what the result should be on remand.  For the reasons previously stated it is **ORDERED** that:

(1)     the decision of  the Commissioner is reversed; and

(2)     this case is remanded to the Commissioner for further proceedings consistent with the foregoing discussion.  The Clerk of Court is directed to enter final judgment pursuant to 42 U.S.C. § 405(g) as this is a "sentence four remand."  Shalala v. Schaefer, 509 U.S. 292, 302-03 (1993); Newsome v. Shalala, 8 F.3d 775, 779-80 (11th Cir. 1993).

**DONE AND ORDERED** in Tampa, Florida on this 26th  day of March, 2008.


ELIZABETH A JENKINS
United States Magistrate Judge